UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS J. PICKETT,<br><br>                        Plaintiff,<br><br>v.<br><br>BOISE POLICE DEPARTMENT;<br>MATTHEW BRYNGELSON; KEPA<br>ZUBIZARRETA; AMY MORGAN; and<br>JOHN DOES I-XL,<br><br>                    Defendants. | Case No. 1:20-cv-00379-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Dennis J. Pickett is proceeding pro se in this civil rights action. Before the Court are Defendants Matthew Bryngelson, Kepa Zubizarreta, and Amy Morgan's ("Defendants") Motion for Summary Judgment (Dkt. 28), and Plaintiff Dennis Pickett's Motion to Compel. (Dkt. 20.) The parties have fully briefed the motions and they are ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be

**MEMORANDUM DECISION AND ORDER - 1**

decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).[1]

For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment, and will deny the Motion to Compel as moot.

## FACTS

### 1.    Factual Background

This matter arises from a police operation that occurred on August 10, 2018, which resulted in the removal of Pickett's four-year old daughter from his home. Defendants Bryngelson, Zubizarreta, and Morgan were involved in various parts of an investigation incident to the child's removal. The operation was initiated after Detective Morgan had received reports that Pickett had inappropriately touched the child and threatened to abuse her, and that Pickett was actively engaged in the distribution and sale of heroin from the residence, which lead to a child well-being investigation. At the time, Pickett was also the subject of a contemporaneous narcotics investigation by the Boise Police Department, led by Officer Zubizarreta.

On August 10, 2018, Detective Morgan authored an "Imminent Danger Report" detailing allegations of abuse and endangerment with respect to Pickett's daughter. Decl. of Morgan ¶ 2. (Dkt. 28-4.) Detective Morgan obtained a court order to remove the child from Pickett's care, issued August 10, 2018. Decl. of Morgan, Ex. E, ¶ 2.[2] Also on that

---

[1] All parties have consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter, including entry of judgment. 28 U.S.C. § 636(c)(1). (Dkt. 16.)
[2] The Order to Remove the Child is filed under seal at Docket 27-1.

**MEMORANDUM DECISION AND ORDER  - 2**

same date, Detective Morgan listened to a recorded Ada County Jail call and heard

Pickett talking to an inmate from a cell phone he was using. Decl. of Morgan ¶ 3. Morgan

heard Pickett acknowledge that there was a police investigation concerning him, and that

he knew police might take his daughter. *Id.* Pickett further talked about "being able to

leave right now." *Id.* According to Morgan, this jail call occurred the day prior, on

August 9, 2018, at 9:23 p.m. *Id.*

Concerned Pickett may attempt to flee with his daughter, Detective Morgan "went

through dispatch to have T-Mobile ping Pickett's cell phone. The location of the pings

came back to the area" of Pickett's residence. Decl. of Morgan ¶ 4. At or about 1:30 p.m.

on August 10, 2018, a surveillance perimeter was established at Pickett's residence. Decl.

of Bryngelson ¶ 17. (Dkt. 28-3.) During the time officers surveilled the residence,

"officer safety concerns were noted including known gang affiliates circling the block."

Decl. of Morgan ¶ 5.

In conjunction with the narcotics investigation, Officer Zubizarreta obtained a

search warrant for Pickett's residence, issued by a state magistrate judge on August 10,

2018, at 4:13 p.m.  Decl. of Zubizarreta ¶ 4. (Dkt. 28-5.).[3] The magistrate judge made a

finding that exigent circumstances justified "noncompliance with knocking and

---

[3] The search warrant is filed under seal at Docket 27-2. The search warrant indicated that proof by
affidavit had been provided showing that certain evidence of the crimes of: Delivery of a Controlled
Substance, Possession with Intent to Deliver, and/or Possession of Controlled Substance, Idaho Code §
37-2732, Possession of Drug Paraphernalia, Idaho Code § 37-2734A, Unlawful Possession of a Firearm,
Idaho Code § 18-3316, Lewd Conduct with a Minor Under Sixteen, Idaho Code § 18-1508, Injury to
Child, Idaho Code § 18-1501(1), and Possession of Sexually Exploitative Material, Idaho Code § 18-
1507A, was present inside Pickett's residence.

MEMORANDUM DECISION AND ORDER  - 3

announcing a police presence pursuant to I.C. § 19-4409," and authorized officers to open closed containers.

Detective Morgan, Officer Zubizarreta, and Sargent Bryngelson proceeded to Pickett's residence on the afternoon of August 10, 2018. Officer Zubizarreta and Sgt. Bryngelson had arrived first, as part of the surveillance team. Decl. of Zubizarreta ¶ 5. Officer Zubizarreta learned Pickett may be in possession of several firearms and had an extensive home surveillance system. *Id.* Sgt. Bryngelson also was aware that Pickett may have at least one firearm in the master bedroom, and that drug paraphernalia had been seen inside the residence by the children involved in Detective Morgan's investigation. Decl. of Bryngelson ¶ 5.

At 5:30 p.m., Detective Morgan spoke to Pickett by telephone, informing him that she had a court order to remove Pickett's daughter from his home due to concerns for the child's safety. Decl. of Morgan ¶ 6, Ex. A. Shortly thereafter, Officer Zubizarreta observed Pickett walking down the sidewalk to the residence, and suspected him of having left the residence via the back door to observe the officers stationed outside. Decl. of Zubizarreta ¶ 6. Pickett re-entered the residence. Decl. of Bryngelson ¶ 14 – 19.

At approximately 6:30 p.m., Sgt. Bryngelson announced the police presence outside of Pickett's home, and ordered Pickett to come outside. Decl. of Bryngelson ¶ 19. Pickett exited the residence, and was thereafter detained by Detective Morgan and Sgt. Bryngelson. Decl. of Zubizarreta ¶ 7, Decl. of Bryngelson ¶ 19. Detective Morgan spoke to Pickett, and according to the audio recording of the conversation, Pickett stated, "My daughter is in there, you can go get her if you want." Decl. of Morgan ¶ 7, Ex. B.

**MEMORANDUM DECISION AND ORDER  - 4**

Detective Morgan proceeded to enter the home with the assistance of Officer Zubizarreta and Sgt. Bryngelson, who were present to do a security sweep for officer safety. *Id.* ¶ 8. Officer Zubizarreta conducted the security sweep of the residence, while Detective Morgan located Pickett's daughter. Decl. of Zubizarreta ¶ 7.

During the sweep of the residence, Sgt. Bryngelson and Officer Zubizarreta entered one of the bedrooms. Decl. of Bryngelson ¶ 23. Sgt Bryngelson was aware from Det. Morgan that this room may have contained firearms, knives, and drug paraphernalia. Decl. of Bryngelson ¶ 23. Aware of the search warrant obtained by Officer Zubizarreta, Sgt. Bryngelson did a "cursory check of the nightstand (no more than 3-5 seconds per drawer) to make sure that there was not a firearm, knives, or drug paraphernalia." Decl. of Bryngelson ¶ 23. No items were manipulated or taken from the drawer. Decl. of Bryngelson ¶ 23. While Sgt. Bryngelson checked the nightstand, Officer Zubizarreta cleared the area under the bed. Decl. of Bryngelson ¶ 23. Sgt. Bryngelson proceeded to the garage of the residence to sweep that area as well. Decl. of Bryngelson ¶ 23.

During the sweep, Sgt. Bryngelson heard a shower running in a locked bathroom and an adult female voice. Decl. of Bryngelson ¶ 22. After ten minutes elapsed, Sgt. Bryngelson became concerned the woman was using the shower as a means of disposing drugs. Decl. of Bryngelson ¶ 24.

Detective Morgan served Pickett with the emergency removal order of his daughter at 6:30 p.m. on August 10, 2018, and provided information concerning a shelter care hearing, set for August 14, 2018. Decl. of Morgan ¶ 9, Ex. C. After Detective Morgan had removed the child from the home, Detective Morgan was given orders that a

**MEMORANDUM DECISION AND ORDER - 5**

"full-scale search" of the residence would not take place due to concerns that there was

insufficient manpower to protect her, Officer Zubizarreta, and CSS personnel while the

warrant was executed. *Id.* ¶ 10. Pickett was thereafter released from the scene. Decl. of

Zubizarreta ¶ 8. According to the Return of Search Warrant, the warrant was not fully

executed.[4]

Pickett filed a lawsuit in state court on March 26, 2020, against the Boise Police

Department, Sgt. Bryngelson, Detective Morgan, and Officer Zubizarreta related to the

events of August 10, 2018, in the Fourth Judicial District of Idaho, in and for Ada

County, Case No. CV01-20-3282. Decl. of Klaas Ex. A. (Dkt. 28-7.) The lawsuit alleged

the officers illegally searched his home, and also asserted claims for negligence, forcible

detainer, and trespass. (Dkt. 28-8 at 1; 28-10.) On July 30, 2020, the court granted the

defendants' motion to dismiss the complaint and entered a judgment dismissing Pickett's

claims with prejudice for failure to comply with the filing deadlines of the Idaho Tort

Claims Act, Idaho Code § 6-901, *et seq.* Decl. Klaas Ex. B, C. This lawsuit followed.

## 2.    Procedural Background

Pickett filed his Complaint in this matter against Defendants on July 30, 2020,

alleging that, on August 10, 2018, Defendant Boise City Police Officers Matthew

Bryngelson, Kepa Zubizarreta, and Amy Morgan entered Plaintiff's home without his

consent, unlawfully searched his home, and removed his daughter from his custody

without a lawful court order. (Dkt. 7.) Pickett asserts violations of his rights under the

---

[4] The Return of Search Warrant is filed under seal at Docket 27-2.

Fourth and Fourteenth Amendments to the United States Constitution, and under Idaho state law. (Dkt. 7.) In its initial review order, the Court found that Pickett's complaint did not state plausible claims for relief, and allowed Pickett to seek leave to file an amended complaint. (Dkt. 7.)

Pickett filed an amended complaint on November 30, 2020. (Dkt. 8.) In its successive review order, the Court found the first amended complaint stated plausible Section 1983 claims against the three individual Defendants under the Fourth and Fourteenth Amendments to the United States Constitution. (Dkt. 9.) The Court allowed the claims alleging unlawful search and seizure, and interference with parental rights, to proceed. However, the Court found that Pickett had not stated a plausible Section 1983 claim against the Boise Police Department under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978), because his allegations concerning the existence of a custom or policy were conclusory. The Court also did not find Pickett stated a plausible claim for fraud under state law. With regard to his other state law claims for negligence, civil trespass, and forcible detainer, because these claims are based on the same factual allegations as Pickett's Section 1983 claims, the Court allowed the claims to proceed provided Pickett could establish compliance with the Idaho Tort Claims Act, Idaho Code § 6-901 *et. seq.* The Court issued its standard disclosure and discovery order for pro se prisoner civil rights cases. (Dkt. 10.)[5]

---

[5] At the time this lawsuit was filed, Pickett was incarcerated. (Dkt. 1.) He was released from prison on or about September 24, 2021. (Dkt. 19.)

**MEMORANDUM DECISION AND ORDER - 7**

## LEGAL STANDARD

**1.    Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp*., 976 F.2d 497, 507 (9th Cir. 1992).

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER  - 8**

2.      **42 U.S.C. § 1983**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. Section

1983 provides a cause of action for the deprivation of "rights, privileges, or immunities

secured by the Constitution or the laws of the United States" by any person acting "under

color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S.

635, 638 (1980). Section 1983 is not itself a source of substantive rights, but rather a

method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490

U.S. 386, 393–94 (1989). To state a claim under Section 1983, a plaintiff must allege (1)

the violation of a right secured by the Constitution or laws of the United States, and (2)

that the violation was committed by a person acting under color of law. *See West v.

Atkins*, 487 U.S. 42, 48 (1988).

In Section 1983 actions, the doctrine of qualified immunity protects state actors

from personal liability for on-the-job conduct so long as the conduct is objectively

reasonable and does not violate clearly established federal rights. *Sizemore v. Shoshone

Cnty.*, No. CV-10-50-EJL-LMB, 2011 WL 2842876, at *5 (D. Idaho June 20, 2011),

*report and recommendation adopted*, No. 2:10-CV-0050-EJL, 2011 WL 2836727 (D.

Idaho July 14, 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "On the

other hand, a state official may be held personally liable in a § 1983 action if the state

actor knew or should have known that he or she was violating a plaintiff's clearly

established federal right(s)." *Id.* "Consistent with its dual purposes of protecting state

actors who act in good faith but redressing clear wrongs, the qualified immunity standard

'gives ample room for mistaken judgments by protecting all but the plainly incompetent

**MEMORANDUM DECISION AND ORDER - 9**

or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224,

227 (1991)). To determine whether an officer is entitled to qualified immunity, the Court

must evaluate two independent questions: (1) whether the officer's conduct violated a

constitutional right, and (2) whether that right was clearly established at the time of the

incident. *Pearson* v. *Callahan*, 555 U.S. 223, 232 (2009).

## ANALYSIS

1.     **Fourteenth Amendment Claim**

Pickett alleges that Defendants' interference with his parental rights violated his

substantive and procedural due process rights under the Fourteenth Amendment. The

principle of substantive due process protects the fundamental right of parents in the care,

custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753

(1982). However, because "the State has a profound interest in the welfare of the child,

particularly his or her being sheltered from abuse," this fundamental right is not absolute.

*Mueller v. Auker*, No. CV-04-399-S-BLW, 2005 WL 8159827, at *7 (D. Idaho Apr. 13,

2005) (unpublished) (internal quotation marks and alteration omitted).

"To state a claim for violation of their substantive due process rights in this

context, plaintiffs must allege conduct by defendants which is so arbitrary and

unreasonable as to shock the conscience of the court." *Faulkner v. Reeves*, 1992 WL

96286, at *9 (D. Pa. 1992) (citing *Fanning v. Montgomery County Children & Youth

Servs.*, 702 F. Supp. 1184, 1190 (D. Pa. 1988), and *In Re Scott County Master Docket*,

672 F. Supp. 1152, 1166–67. (D. Minn. 1987)); *see also Sinaloa Lake Owners Ass'n v.

City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989) (stating that the right to

**MEMORANDUM DECISION AND ORDER  - 10**

substantive due process is violated if the challenged action "was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare") (internal quotation marks omitted).

The principle of procedural due process also applies in this context. Parents may assert a pre-deprivation due process claim if their children were taken from their custody without sufficient investigation and a court order. A claim that a child was unlawfully seized and removed from a parent's custody is "assessed under the Fourteenth Amendment standard for interference with the right to family association." *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (as amended).

Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of their child unless they possess information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1106 (9th Cir. 2001) (quoting *Wallis*, 202 F.3d at 1138.) If a child is lawfully removed from a parent's custody pursuant to a court order, procedural due process also generally "guarantees prompt post-deprivation judicial review." *Campbell v. Burt*, 141 F.3d 927, 929 (9th Cir. 1998).

Here, there is no dispute that: Defendants possessed a court order authorizing removal of Pickett's minor child from Pickett's residence; Pickett was provided a copy of the court order; and the court order informed Pickett of the date and time of the shelter care hearing that would follow the removal on August 14, 2018. In light of this

MEMORANDUM DECISION AND ORDER - 11

undisputed evidence, Defendants have met their burden on summary judgment, and the Court finds Defendants' actions taken pursuant to a lawful court order do not amount to a constitutional violation.

**2.     Fourth Amendment Claim**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A search and seizure is reasonable when probable cause is established by a valid warrant. U.S. Const. Amend. IV.

Pickett alleges Defendants conducted an unlawful search and seizure on August 10, 2018, in violation of the Fourth Amendment. Specifically, Pickett contends Detective Morgan's GPS ping, which provided Pickett's approximate location, and the "warrantless, nonconsensual entry into Pickett's home…without requisite probable cause with the intent of discovering illegal contraband, firearms, knives, drugs or drug paraphernalia" violated Pickett's Fourth Amendment rights.  (Dkt. 8-1 at 11.) Pickett further asserts that Defendants' conduct in opening nightstand drawers that afternoon at his residence exceeded the scope of a protective sweep and that exigent circumstances did not exist to allow law enforcement to do so.

Defendants argue there is no clearly established federal right prohibiting the use of cell-site location information to determine the real-time location of a cell phone, or alternatively that exigent circumstances existed to justify using Pickett's real-time cell-site location information. Next, Defendants justify their conduct while inside Pickett's residence on the grounds that they had a valid search warrant supported by probable

**MEMORANDUM DECISION AND ORDER  - 12**

cause to search the residence for illegal drugs and weapons, and also on the grounds that there was a valid reason to conduct a protective sweep.

     *a.*       *Cell Site Location Data (*CSLI*)*

An individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. *Carpenter v. United States*, ___ U.S. ___, 138 S. Ct. 2206, 2217, 201 L. Ed. 2d 507 (2018). In *Carpenter*, the United State Supreme Court held that the Government conducted a warrantless search when it mapped the plaintiff's historical cell phone location over the course of 127 days, thus obtaining an all-encompassing record of the cell phone owner's past whereabouts. *Id.* However, the Court's decision was "a narrow one," because it expressly excluded from its reach real-time CSLI or "tower dumps." 138 S.Ct. at 2220. Thus, the question of whether acquiring real-time tracking data constitutes a search was unanswered by *Carpenter*. *United States v. Green*, 981 F.3d 945, 958 (11th Cir. 2020) ("The question of whether acquiring [real-time tracking data] constitutes a search was unanswered in 2013 and remains unanswered today.") (citing *Carpenter*, 138 S. Ct. at 2217–19, 2221).

After *Carpenter*, the United States Court of Appeals for the Seventh Circuit held that the collection of real-time CSLI for a matter of hours to locate a suspect wanted for multiple armed robberies did not constitute a search. *United States v. Hammond*, 996 F.3d 374, 392 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 2646 (2022). The facts in *Hammond* are similar to those before the Court, and the Court finds the reasoning persuasive.

Detective Morgan requested real-time CSLI to locate Pickett's current whereabouts incident to the immediate removal of Pickett's daughter from his custody pursuant to a court order. Detective Morgan limited the use of the CSLI for the purpose of finding Picket, and in turn his daughter, based upon concerns for the child's safety.

The Court therefore finds Defendants are entitled to judgment as a matter of law, because there is no clearly established federal right prohibiting the use of real-time CSLI under the particular facts of this case. Consequently, the Court finds, as a matter of law, that there was no violation of a federally secured right, and Pickett cannot establish an essential element of his claim.

Alternatively, the Court finds that exigent circumstances justified Detective Morgan's actions. The government bears the burden of showing the existence of exigent circumstances by particularized evidence to justify a departure from the normal procedure of obtaining a warrant. *United States v. Suarez*, 902 F.2d 1466, 1468 (9th Cir. 1990) (citing *United States v. Alvarez*, 810 F.2d 879, 881 (9th Cir. 1987)). The officials must have had a reasonable belief that exigent circumstances existed. *Suarez*, 902 F.2d at 1468. Furthermore, the presence of exigent circumstances necessarily implies that there is insufficient time to obtain a warrant; therefore, the government must show that a warrant could not have been obtained in time. *United States v. Tarazon*, 989 F.2d 1045, 1049 (9th Cir. 1993). In *Carpenter,* the Court identified such exigencies as "the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." 138 S. Ct. at 2223.

**MEMORANDUM DECISION AND ORDER - 14**

Here, Detective Morgan had reason to believe Pickett might flee with his daughter before she could remove the child from Pickett's custody. Detective Morgan sought the removal order based upon probable cause to believe the child was in imminent danger due to sexual abuse, and exposure to drug and gang activity. On August 10, 2018, she had listened to a jail call that occurred the day prior wherein Pickett discussed his awareness of the police investigation, and about leaving with his daughter. Based on that information, and knowing that Picket could travel and be out of cell phone service, Detective Morgan requested CSLI to locate Pickett and his daughter's current whereabouts so that she could carry out the court order to remove the child that same afternoon. Under these facts, the Court finds the exigencies of the circumstances do not call into doubt the warrantless access to CSLI used to locate Pickett and his daughter. *Carpenter*, 138 S.Ct. at 2223.

       b.     *Search and Protective Sweep*

Pickett's amended complaint asserts that Defendants conducted a "warrantless search" of his residence with the intent of seeking out illegal contraband in drawers, closets, and under the bed. However, the undisputed facts establish Officer Zubizarreta obtained a search warrant for the residence that permitted officers to search for evidence of drug or firearm crimes. Based upon the affidavit of probable cause submitted by Officer Zubizarreta in support of the application for search warrant, the magistrate judge found that exigent circumstances existed to justify noncompliance with knocking and announcing a police presence, and that probable cause existed to search the residence for

illegal drugs, weapons, and sexually exploitative material. The warrant included also an authorization to open closed containers.

The undisputed facts establish also that it was not until after Pickett's daughter was removed from the residence that officers made the decision not to effectuate a full-scale search of the residence due to concerns for officer safety. Regardless, before entering the residence and up through the time Pickett's daughter was located inside, Officer Zubizarreta's and Sgt. Bryngelson's conduct did not exceed the scope of the warrant. The warrant authorized the opening of containers, which would reasonably include opening nightstand drawers. The fact officers later decided not to fully execute the warrant does not negate its existence in the first instance, thus providing lawful authority for the officers to enter the residence and search it for items to be seized.

Additionally, based upon information known to officers prior to entering the residence, and after being granted permission from Pickett to enter, the Court finds the evidence undisputed that Defendants had a valid reason to conduct a protective sweep of the residence. The United States Supreme Court has recognized a need for law enforcement to adequately protect themselves during searches of a home where a suspect may hide and readily access a weapon, *Maryland v. Buie*, 494 U.S. 325, 333-34 (1990), thereby creating a limited exception to the warrant requirement. *See United States v. Lemus*, 582 F.3d 958, 961 (9th Cir. 2009). Concern for the officers' safety justifies a search incident to arrest without probable cause or reasonable suspicion of areas including closets and other spaces immediately adjoining the place of arrest capable from

**MEMORANDUM DECISION AND ORDER - 16**

which an attack could be immediately launched. *United States v. Lemus*, 582 F.3d 958, 962 (9th Cir. 2009).

Furthermore, officers may conduct a protective sweep of adjoining areas if there are articulable facts that would reasonably result in "a prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Id*. (quoting *Buie*, 494 U.S. at 334). A protective sweep "may extend only to a cursory inspection of those spaces where a person may be found," and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335.

Here, the undisputed facts before the Court show that officers observed gang activity in the area during the period of surveillance on August 10, 2018, and were aware the residence had a surveillance system. The search warrant was based upon probable cause that there were illegal drugs and firearms inside the residence. Further, Detective Morgan informed Sgt. Bryngelson that, during her investigation, she had reliable information that at least one firearm was kept in the master bedroom, and that the children involved in her investigation had seen drug paraphernalia inside the residence. Officers were told by Pickett that his daughter was inside the residence, but the evidence before the Court does not indicate they knew her precise location inside the residence, or whether other adults might also be inside.

As Sgt. Bryngelson and Officer Zubizarreta conducted the sweep, they heard a shower running in a locked bathroom, along with an adult female voice. Sgt. Bryngelson indicated in his declaration that the woman's behavior concerned him, as he suspected the

**MEMORANDUM DECISION AND ORDER  - 17**

shower was being used to disguise the disposal of illegal drugs or other contraband. The officers conducted a sweep of the residence's interior, including the master bedroom, under the bed, and the adjoining garage. All of these areas were capable of concealing a person and justified a protective sweep to ensure no one else was inside the residence that posed a threat to officer safety. *See United States v. Fischer*, No. 1:17-CR-00304-BLW, 2022 WL 782969, at *3 (D. Idaho Mar. 14, 2022) (finding protective sweep of immediately adjoining areas permissible).

Accordingly, the Court finds Defendants have met their burden on summary judgment, and that Defendants' actions do not amount to a constitutional violation.

## 3.     State Law Claims

Pickett brings claims for negligence, civil trespass, and forcible detainer under Idaho state law. The Court allowed these claims to proceed provided Pickett could establish compliance with the Idaho Tort Claims Act, Idaho Code § 6-901 *et. seq.* Defendants contend that the state court determination is preclusive here, and that it bars Pickett's state law claims in this lawsuit.

The Idaho Tort Claims Act generally waives sovereign immunity and subjects governmental entities to liability for damages "arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment." Idaho Code § 6–903. The Idaho Supreme Court has made clear that "[c]ompliance with the Idaho Tort Claims Act's notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter

how legitimate." *McQuillen v. City of Ammon*, 113 Idaho 741, 744 (1987) (emphasis added).

Pickett's state court lawsuit, filed in the Fourth Judicial District Court of Idaho in and for the County of Ada, named Defendants Bryngelson, Zubizarreta, and Morgan. He alleged Defendants committed negligence, forcible detainer, and trespass, and that the allegations arose out of Defendants' conduct on August 10, 2018. The state court dismissed Pickett's lawsuit for failure to comply with the notice requirement of Section 906 of the Idaho Tort Claims Act, and entered a final judgment. Pickett did not file an appeal.

The Court finds the state court's determination is preclusive. Claim preclusion bars a later suit between (1) the same parties (2) on the same claim (3) when the first suit ended in final judgment. *Sadid v. Vailas*, 936 F. Supp. 2d 1207, 1218 (D. Idaho 2013). There is no dispute that Pickett sued Defendants in state court alleging the same tort claims as in this matter, arising out of the same course of conduct, and that the state court entered final judgment. *See Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 804 P.2d 319, 323 (1990). (Two cases are based upon the "same claim" when they arise out of the "same transaction or series of transactions."). The state court's determination was based upon a finding Pickett had not complied with the Idaho Tort Claims Act. Accordingly, the Court finds claim preclusion bars Pickett's state law claims in this lawsuit.

**MEMORANDUM DECISION AND ORDER - 19**

## CONCLUSION

The Court concludes summary judgment is appropriately entered for Defendants. The undisputed facts before the Court demonstrate Pickett cannot establish essential elements of his Section 1983 claims as a matter of law, and that his claims under state law are precluded by the state court judgment. Accordingly, Pickett's motion to compel is moot, and it will be denied.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Defendants' Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

2)      Plaintiff's Motion to Compel (Dkt. 20) is **DENIED as MOOT.**

DATED: August 3, 2022

Honorable Candy W. Dale
United States Magistrate Judge